IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs December 21, 2010

## WARREN FOWLER v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Knox County**
**No. 88993     Mary Beth Leibowitz, Judge**

---

**No. E2010-01027-CCA-R3-PC - Filed April 6, 2011**

---

The Petitioner, Warren Fowler, appeals as of right from the Knox County Criminal Court's denial of his petition for post-conviction relief. The Petitioner pled guilty to attempted first degree murder and especially aggravated kidnapping, both Class A felonies, and received concurrent sentences of 20 years. The Petitioner challenges the performance of trial counsel and the voluntariness of his guilty plea. Following our review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed.**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which JOSEPH M. TIPTON, P.J., and JAMES CURWOOD WITT, JR., J., joined.

Albert J. Newman, Jr., Knoxville, Tennessee, for the appellant, Warren Fowler.

Robert E. Cooper, Jr., Attorney General and Reporter; Matthew Bryant Haskell, Assistant Attorney General; Randall Eugene Nichols, District Attorney General; and Leslie Nassios, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

The Petitioner's convictions stem from his involvement in the kidnapping and attempted murder of Gary Stone. The State alleged that had the Petitioner's case gone to trial, they would have proven that the Petitioner and Carlton Brown attacked the victim in the Petitioner's home. After over-powering the victim, they bound him with duct tape and took him to the Petitioner's car. They transported the victim to another location, where they took the victim out of the car and threatened him again. The victim, who could partially observe what was happening through the duct tape wrapped around his head, saw that the

Petitioner was carrying a handgun. The Petitioner told the victim that "he was going to put one in him and . . . set him on fire." The Petitioner shot the victim in the upper back and in the back of the head before leaving the victim. Once alone, the victim crawled to another location, where he summoned help.

The victim survived his injuries but had to undergo surgery to remove the bullet fragments from his skull. As a result of his injuries, the victim suffered from hearing loss and problems with his memory and speech. The victim also suffered "terrible anxiety," which forced him to seek treatment. The victim identified the Petitioner and Mr. Brown as his captors and participated in two preliminary hearings[1] relative to the Petitioner's case. In the investigation of the case, the Petitioner's car was impounded and searched. Inside the car, officers found the victim's watch and a piece of duct tape that was similar to the duct tape used to bind the victim. Officers also found shoe imprints from the rear passenger window of the Petitioner's car that were consistent with the victim's shoes.

At the guilty plea submission hearing on April 30, 2007, the Petitioner was advised by the trial court that he would receive concurrent sentences of 20 years and that his sentence was "right in the middle of the range for each of [the] charges." The trial court also advised the Petitioner that he would have to serve 85 percent of his sentence before he would be eligible for parole. When asked if he was satisfied with trial counsel's representation, the Petitioner stated, "Pretty much." When asked if his "concerns" had been "relieved," the Petitioner stated, "They have." The Petitioner did not indicate that he was forced to plead guilty or that he did not wish to plead guilty. On the contrary, he answered all of the trial court's questions and took responsibility for his actions. After pleading guilty, the Petitioner timely filed a petition for post-conviction relief in which he claimed that trial counsel was ineffective and that he did not voluntarily plead guilty.

At the evidentiary hearing, the Petitioner testified that he hired trial counsel two days after he was arrested. The Petitioner stated that trial counsel met with him approximately six times and that sometimes trial counsel sent the private investigator to speak with him. He stated that he spent a total of 10 to 12 hours with trial counsel before he pled guilty. Trial counsel told the Petitioner that if he were convicted, he would likely receive a sentence of 40 years. The Petitioner asserted that trial counsel's calculation of his possible sentence was incorrect because he had several charges, which trial counsel never discussed with him. He stated that he was charged with attempted first degree murder, especially aggravated kidnapping, and aggravated robbery and that he did not learn about the aggravated robbery charge until his second preliminary hearing.

---

[1]The Petitioner had two preliminary hearings because the first hearing was not properly recorded.

The Petitioner admitted that the victim testified at both preliminary hearings and was able to identify him. The Petitioner stated that he noticed contradictions in the victim's testimony regarding "who played what role" in the victim's kidnapping and attempted murder. He stated that trial counsel received the discovery materials on March 28, 2007, but that when he asked trial counsel for the materials on April 5, 2007, trial counsel did not show him the materials. At that time, trial counsel only showed him the photographs of the victim and told him that he would likely be convicted based on the photographs. On that same day, trial counsel advised him that he should accept a 15-year offer from the State. The Petitioner told trial counsel that he wanted to see the discovery materials before he made his decision and that trial counsel told him that he only had four days to make his decision. The Petitioner stated that on April 9, 2007, trial counsel asked him if he would take the deal. The Petitioner refused the offer because he had not seen the discovery materials.

The Petitioner testified that the victim stated at the preliminary hearing that a cellular telephone had been used to record the abduction. The Petitioner said that the telephone was not listed as one of the items found in the vehicle and that he believed that the absence of the telephone might have been beneficial for his defense. The Petitioner told trial counsel to inspect the vehicle, but trial counsel did not file a motion to inspect the vehicle until the vehicle had already been auctioned and was no longer available. The Petitioner admitted that trial counsel filed a subsequent motion to suppress the items found in the vehicle but that trial counsel never sought a ruling on the motion. When trial counsel finally showed the Petitioner the discovery materials, the Petitioner learned that the cellular telephone had been found in the vehicle.

The Petitioner testified that he and trial counsel never talked about a theory of defense and that trial counsel simply told him that he would be convicted based upon the photographs of the victim. The Petitioner stated that while the photographs depicted the victim, he was not in any of the photographs; therefore, he did not believe that the State had enough evidence to convict him. The Petitioner stated that the victim's identification was faulty because the victim had testified that his eyes had been "duct taped and bound." The Petitioner stated that four days before trial, Mr. Brown agreed to be a State's witness. Trial counsel told the Petitioner that they did not have an adequate defense. The Petitioner told trial counsel to ask for a continuance, but trial counsel refused, stating that the trial court would not allow them to continue the case. Trial counsel told the Petitioner that the trial court might continue the case if the Petitioner fired him; however, he refused to refund the Petitioner any of the money that had already been paid for the defense.

The Petitioner testified that trial counsel did not advise him regarding any of the lesser-included offenses; failed to subpoena a witness, Todd Fawver, that had contradicted the victim's testimony; and told him that the minimum sentence he could receive was 20

years. The Petitioner stated that he ultimately decided to accept the 20-year offer because he believed he was receiving the minimum sentence and because he believed that trial counsel was not prepared to represent him at trial.

On cross-examination, the Petitioner admitted that the victim had identified him. The Petitioner stated that he never saw any statements from Mr. Brown that would have corroborated the victim's testimony and identification. When confronted with the photographs of the victim, the Petitioner admitted that he had received the photographs. The Petitioner admitted that the medical records reflected that the victim had two bullet wounds and that the records were consistent with the victim's testimony regarding his injuries. The Petitioner admitted that the victim had suffered serious bodily injury and had been kidnapped and robbed. When asked if he believed that he would prevail at trial given the victim's testimony, the medical records, the testimony from other witnesses and Mr. Brown, the Petitioner stated, "I feel confident of going to trial with that."

The Petitioner stated that he felt coerced into pleading guilty and that trial counsel did not have his "best interest at heart . . . and didn't take his time to prepare [a] defense for a trial." The Petitioner admitted that he had received a sentence that was less than the potential sentence he could have received had he been convicted. The Petitioner admitted that he told the trial court that he understood the agreement and that he wanted to plead guilty. The Petitioner stated that he believed that he could have been convicted of a lesser-included offense if he had decided to proceed with a trial. The Petitioner stated that he also believed that he could have received a lesser sentence. The Petitioner admitted that he had a criminal history, that the trial court could have applied several enhancement factors when sentencing him, and that the trial court could have concluded that he was a dangerous offender and ordered him to serve his sentences consecutively.

Trial counsel testified that the Petitioner never told him that he was innocent and that the Petitioner was more concerned with "trying to figure how he could avoid being convicted." Trial counsel stated that while he may not have shown the Petitioner all of the evidence and discovery materials relevant to the case, he reviewed the evidence and talked with the Petitioner about the evidence. Trial counsel stated that he could not recall whether he "went over the indictment page by page" with the Petitioner but that they discussed the "three serious charges that he had against him." Trial counsel stated that the Petitioner refused the 15-year offer because he was "just trying not to think about" his case.

Trial counsel testified that he told the Petitioner about the 15 to 25-year range of punishment for his charges and that if the Petitioner were convicted, the trial court, starting at a sentence of 20 years, would lower or increase his sentence based upon any potential enhancement or mitigating factors. He admitted that his advice was incorrect given the

-4-

relevant changes in the 2005 Sentencing Act that were applicable to the Petitioner's case. However, he said that he told the Petitioner that the minimum sentence he could receive was 15 years. He said that if the case had proceeded to trial, he was prepared to try the case but that he told the Petitioner that he thought he would be convicted. He said that the Petitioner did not want to go to trial but that the Petitioner wanted the 15-year offer back. Trial counsel said that he attempted to get the 15-year offer back but that the prosecutor refused and would only offer a sentence of 20 years.

Trial counsel said that after reviewing all of the photographs, he attempted to inspect the vehicle. However, the vehicle had already been sold. He stated that the photographs of the abduction were taken at the apartment, not in the vehicle. He stated that the victim's testimony at the second preliminary hearing was not "radically different" from his testimony at the first hearing and that the victim identified the Petitioner at both hearings.

On cross-examination, trial counsel admitted that the 20-year offer would have been removed had he sought to continue the case. Trial counsel stated that the State had a "lot of proof" and that "it was a strong case." He said that there were pictures of streaks in the vehicle that matched the "ridges on the victim's tennis shoes." He admitted that the trial court could have considered "aggravating circumstances" when sentencing the Petitioner.

In a written order, the post-conviction court found that the evidence against the Petitioner would have been sufficient to convict him had he not chosen to plead guilty and that the Petitioner, against the advice of counsel, chose to reject the 15-year offer. The post-conviction court also found that the Petitioner "failed to prove that, but for [trial counsel's] performance he would have accepted the 15-year offer." The post-conviction court further found that the Petitioner "failed to prove that but for [trial counsel's] actions the result (the 20-year prison sentence) would have been any different."

## ANALYSIS

The Petitioner raised numerous allegations in his petition for post-conviction relief but only raised two issues on appeal to this court. The Petitioner contends that trial counsel's failure to provide him with the discovery materials caused him to make an uninformed decision when he rejected the State's 15-year offer. The Petitioner further contends that trial counsel erroneously advised him that the State's subsequent 20-year offer was the least sentence that he could receive and that as a result of that advice and counsel's unpreparedness, he accepted the 20-year offer. The State responds that the Petitioner had ample information when he decided to reject the State's 15-year offer. The State further responds that the Petitioner was aware of the possible sentencing ranges when he pled guilty and that the Petitioner made an informed decision to plead guilty. The State asserts that the

Petitioner has also failed to prove that but for counsel's errors, he would have insisted on going to trial.

The burden in a post-conviction proceeding is on the petitioner to prove the factual allegations to support his grounds for relief by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f); See Dellinger v. State, 279 S.W.3d 282, 293-94 (Tenn. 2009). If the petitioner proves his allegations by clear and convincing evidence, the trial court must then determine whether trial counsel was ineffective according to Strickland v. Washington, 466 U.S. 668, 687 (1984). Dellinger, 279 S.W.3d at 293-94. On appeal, we are bound by the trial court's findings of fact unless we conclude that the evidence in the record preponderates against those findings. Fields v. State, 40 S.W.3d 450, 456 (Tenn. 2001). Because they relate to mixed questions of law and fact, we review the trial court's conclusions as to whether counsel's performance was deficient and whether that deficiency was prejudicial under a de novo standard with no presumption of correctness. Id. at 457.

Under the Sixth Amendment to the United States Constitution, when a claim of ineffective assistance of counsel is made, the burden is on the petitioner to show (1) that counsel's performance was deficient and (2) that the deficiency was prejudicial. Strickland, 466 U.S. at 687; see Lockhart v. Fretwell, 506 U.S. 364, 368-72 (1993). Failure to satisfy either prong results in the denial of relief. Strickland, 466 U.S. at 697. In other words, a showing that counsel's performance falls below a reasonable standard is not enough; rather, the petitioner must also show that "there is a reasonable probability" that but for the substandard performance, "the result of the proceeding would have been different." Id. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. The Strickland standard has been applied to the right to counsel under article I, section 9 of the Tennessee Constitution. State v. Melson, 772 S.W.2d 417, 419 n.2 (Tenn. 1989). In the context of a guilty plea as in this case, the effective assistance of counsel is relevant only to the extent that it affects the voluntariness of the plea. Therefore, to satisfy the second prong of Strickland, the petitioner must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985); see also Walton v. State, 966 S.W.2d 54, 55 (Tenn. Crim. App. 1997).

The Petitioner asserts that he rejected the 15-year offer because of counsel's refusal to provide the discovery materials and that as a result of counsel's failure, he made an uninformed decision to reject the offer. However, trial counsel testified that the Petitioner was aware of the evidence against him and had been told the range of punishment. Additionally, the presence or absence of the cellular telephone was not a matter of great importance given the fact that the victim had twice identified the Petitioner as the leader in

the commission of the offense. More importantly, trial counsel relayed the offer to the Petitioner. See Harris v. State, 875 S.W.2d 662 (Tenn. 1994) (holding that the failure of counsel to convey plea offer was deficient and prejudicial under facts of the case). Accordingly, the Petitioner is not entitled to relief on this issue.

The Petitioner next asserts that he would have proceeded to trial if not for counsel's unpreparedness. However, trial counsel stated that he was prepared to proceed with a trial but that he had advised the Petitioner that they would not prevail. Indeed, the evidence reflects that trial counsel's advice was likely correct given the victim's identification of the Petitioner on two separate occasions. Accordingly, we conclude that the Petitioner has failed to prove his allegation of fact by clear and convincing evidence.

The Petitioner further asserts that he would have proceeded to trial had counsel not given him erroneous advice regarding the sentencing procedure that the trial court would follow. We acknowledge that trial counsel erroneously stated that the trial court would begin its sentencing decision at the mid-point of the range for his Class A felonies before considering the enhancement and mitigating factors. However, trial counsel told the Petitioner that the minimum sentence he could receive was 15 years. Moreover, we are not convinced that if the Petitioner knew that the trial court would begin its sentencing decision at the lowest point in the range, the Petitioner would have proceeded to trial. Trial counsel stated that the Petitioner never intended on proceeding with a trial and never asserted that he was innocent but that the Petitioner was merely upset that he could no longer accept the 15-year offer. The trial court advised the Petitioner that he was receiving a sentence in the mid-point of the range because he was pleading guilty to two Class A felonies as a Range I offender. See Tenn. Code Ann. § 40-35-112(a)(1) (providing that the sentencing range for a Range I offender convicted of a Class A felony is "not less than fifteen (15) nor more than twenty-five (25) years"). Accordingly, we conclude that the Petitioner has failed to prove that he would have proceeded to trial if not for trial counsel's erroneous advice.

CONCLUSION

In consideration of the foregoing and the record as a whole, the judgment of the post-conviction court is affirmed.

_____
D. KELLY THOMAS, JR., JUDGE

-7-